# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Case No. 2:19-CV-11100

ROBIN LATORRE, PATRICIA ANDERSON, and ARKENDIA WILLIAMS, individually and on behalf of a class of similarly situated individuals,

Judge Linda V. Parker
Magistrate Judge Elizabeth A. Stafford

         Plaintiffs,

v.

GENERAL MOTORS, LLC,

         Defendant.

## GENERAL MOTORS LLC'S MOTION TO DISMISS
## CLASS ACTION COMPLAINT

General Motors LLC respectfully moves to dismiss all claims in plaintiffs' Class Action Complaint (ECF No. 1), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  The grounds and legal authority are set forth in the accompanying memorandum.

On October 10, 2019, pursuant to E.D. Mich. LR 7.1(a), GM's counsel had a telephone conference with Plaintiffs' counsel during which GM's counsel explained the nature and legal bases of the motion and requested, but did not obtain, concurrence in the relief sought.

Respectfully submitted,

*/s/Stephanie A. Douglas*
Stephanie A. Douglas
Susan M. McKeever
BUSH SEYFERTH PLLC
100 West Big Beaver Road, Suite 400
Troy, MI 48084
Telephone: (248) 822-7800
Facsimile: (248) 822-7000
douglas@bsplaw.com
mckeever@bsplaw.com

Kathleen Taylor Sooy
Jerome A. Murphy
Rachel P. Raphael
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
ksooy@crowell.com
jmurphy@crowell.com
October 10, 2019                rraphael@crowell.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
|  | Case No. 2:19-CV-11100 |
| ROBIN LATORRE, PATRICIA ANDERSON, and ARKENDIA WILLIAMS, individually and on behalf of a class of similarly situated individuals, | Judge Linda V. Parker<br>Magistrate Judge Elizabeth A. Stafford |
| Plaintiffs, | |
| v. | |
| GENERAL MOTORS, LLC, | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF
## GENERAL MOTORS LLC'S MOTION TO DISMISS
## <u>CLASS ACTION COMPLAINT</u>

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS ......................................................................................3

LEGAL STANDARD..............................................................................................7

ARGUMENT ..........................................................................................................8

I.    PLAINTIFFS DO NOT PLEAD VIABLE STATE LAW IMPLIED
WARRANTY CLAIMS (Counts 4, 9, and 14)................................................8

    A.    Plaintiffs Do Not Allege That The Vehicles Were
Unmerchantable At The Time They Left GM's Control.........................8

    B.    Plaintiffs LaTorre And Williams' Claims For Breach Of Implied
Warranty Are Time-Barred....................................................................9

    C.    New York And Ohio Privity Requirements Bar The Implied
Warranty Claims of Plaintiffs LaTorre And Williams. .......................11

    D.    Plaintiff Anderson's Implied Warranty Claim Is Barred For
Failure To Provide The Requisite Notice. ...........................................11

II.    PLAINTIFFS DO NOT PLEAD A VIABLE CLAIM UNDER THE
MAGNUSON-MOSS WARRANTY ACT (Count 15)...................................13

    A.    Plaintiffs Do Not Allege A Viable State Law Warranty Claim. ..........13

    B.    Plaintiffs Cannot Satisfy The Statutory Prerequisites For A Class
Action Under The MMWA. ..................................................................14

III.    PLAINTIFFS DO NOT STATE A CLAIM FOR FRAUDULENT
CONCEALMENT (Counts 2, 7, and 11).......................................................14

    A.    Plaintiffs Do Not Meet The Particularity Requirements Of
Rule 9(b). .............................................................................................15

    B.    Plaintiffs Do Not Allege GM Had Knowledge Of A Defect At
The Time Of Sale..................................................................................16

        1.    NHTSA and Third-Party Website Complaints ............................17

        2.    2011 CSC and Technical Service Bulletins ................................21

        3.    Product Testing ...........................................................................23

    C.    Plaintiffs Do Not Allege That GM Had A Duty To Disclose. ..............24

i

IV.  PLAINTIFFS DO NOT STATE CLAIMS FOR VIOLATION OF
     STATE CONSUMER PROTECTION STATUTES (Counts 1, 5, 6, and
     10).......................................................................................................................26

     A.   Plaintiffs Do Not Adequately Plead Consumer Protection Claims.......26

          1.   Plaintiffs Anderson And LaTorre Do Not Plead Deceptive
               Conduct, Reliance, Or Causation..................................................26

          2.   Plaintiffs Do Not Allege GM Had Knowledge Of A Defect
               At The Time Of Sale.....................................................................28

     B.   Certain Consumer Protection Act Claims Fail On State-Specific
          Grounds................................................................................................29

          1.   The Ohio Deceptive Trade Practices Act Does Not Provide
               A Cause Of Action For Plaintiff Williams. ..................................29

          2.   Plaintiff Anderson Cannot Demonstrate The Injury Required
               Under the Maryland Consumer Protection Act. ...........................30

          3.   Plaintiff LaTorre And The Putative New York Subclass Are
               Not Entitled To Equitable Relief Under New York General
               Business Law. ...............................................................................31

V.   PLAINTIFFS DO NOT PLEAD VIABLE UNJUST ENRICHMENT
     CLAIMS (Counts 3, 8, and 13).........................................................................33

CONCLUSION ......................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*200 N. Gilmor, LLC v. Capital One, Nat. Ass'n*,
   863 F. Supp. 2d 480 (D. Md. 2012) ........................................................... 14, 24

*All-U-Need Temporary Servs. v. First Transit, Inc.*,
   No. 09-cv-3229 (DKC), 2010 WL 2560089 (D. Md. June 18,
   2010) .......................................................................................................... 1, 14

*Am. Mfg. Co. v. U.S. Shipping Bd. E.F. Corp.*,
   7 F.2d 565 (2d Cir. 1925) ............................................................................. 12

*Aracena v. BMW of N. Am., LLC*,
   159 A.D.3d 664 (N.Y. App. Div. 2018) ....................................................... 11

*ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., LP.*,
   750 F. Supp. 2d 839 (N.D. Ohio 2010) ........................................................ 33

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of
   Carpenters*,
   459 U.S. 519 (1983) ...................................................................................... 7

*ATM Exchange, Inc. v. Visa Intern. Service Ass'n*,
   No. 1:05-cv-732, 2008 WL 3843530 (S.D. Ohio Aug. 14, 2008) ................. 24

*Bannister v. Agard*,
   125 A.D.3d 797 (N.Y. App. Div. 2015) ....................................................... 24

*Beck v. FCA US LLC*,
   273 F. Supp. 3d 735, 753-54 (E.D. Mich. 2017) ................................... 18, 23

*Belifore v. Proctor & Gamble Co.*,
   94 F. Supp. 3d 440, 446 (E.D.N.Y. 2015) .................................................... 27

*Bellinger v. Hewlett Packard Co.*,
   No. 20744, 2002 WL 533403 (Ohio Ct. App. Apr. 10, 2002) ................. 14, 25

*Berenblat v. Apple, Inc.*,
 Nos. 08-4969 JF (PVT), 09-1649 JC (PVT), 2010 WL 1460297
 (N.D. Cal. Apr. 9, 2010) ...................................................................................17

*Blankenship v. CFMOTO Powersports, Inc.*,
 2011–Ohio–948, 161 Ohio Misc. 2d 5, 944 N.E.2d 769 ...................................29

*Blissard v. FCA US LLC*,
 2018 WL 6177295 (C.D. Cal. Nov. 9, 2018) .............................................18, 21

*Bryde v. Gen. Motors LLC*,
 No. 16-cv-02421 (WHO), 2016 WL 6804584 (N.D. Cal. Nov. 17,
 2016) .................................................................................................................16

*Cacchillo v. Insmed, Inc.*,
 638 F.3d 401 (2d Cir. 2011) ............................................................................31

*Cali v. Chrysler Grp. LLC*,
 2011 WL 383952 (S.D.N.Y. Jan. 18, 2011) ......................................................13

*Carbone v. Nueva Constr. Grp., L.L.C.*,
 83 N.E.3d 375 (Ohio Ct. App. 2017).................................................................33

*Catalano v. BMW of N. Am., LLC*,
 167 F. Supp. 3d 540, 559-60 (S.D.N.Y. 2016).............................................14, 28

*Chambers v. King Buick GMC, LLC*,
 43 F. Supp. 3d 575, 621 (D. Md. 2014).................................................29, 30, 31

*Chang v. Fage USA Dairy Industry, Inc.*,
 No. 14-cv-3826 (MKB), 2016 WL 5415678 (E.D.N.Y. Sept. 28,
 2016) ...........................................................................................................31, 32

*Chevron U.S.A. Inc. v. Apex Oil Co.*,
 113 F. Supp. 3d 807, 822 (D. Md. 2015)...........................................................33

*Chiarelli v. Nissan N. Am., Inc.*,
 No. 14-cv-4327 (NGG)(VVP), 2015 WL 5686507 (E.D.N.Y. Sept.
 25, 2015) .......................................................................................................9, 10

*Crickenberger v. Hyundai Motor Am.*,
 404 Md. 37 (2008) ..............................................................................................8

iv

*Curl v. Volkswagen of Am., Inc.*,
    871 N.E.2d 1141 (Ohio 2007) ..........................................................................11

*Dawson v. Blockbuster, Inc.*
    No. 86451, 2006-Ohio-1240, 2006 WL 1061769 (Ohio Ct. App.
    Mar. 26, 2006)................................................................................28, 29

*Dean v. Beckley*,
    Civil No. CCB-10-297, 2010 WL 3928650 (D. Md. Oct. 1, 2010) ..................13

*Diagle v. Ford Motor Co.*,
    2012 WL 3113854 (D. Minn. July 31, 2012) .................................................5, 31

*Doll v. Ford Motor Co.*,
    814 F. Supp. 2d 526 (D. Md. 2011)..................................................................12

*Duffie v. Mich. Grp., Inc. – Livingston*,
    No. 14-cv-14148, 2016 WL 8259511 (E.D. Mich. Jan. 15, 2016)..............33, 34

*Durso v. Samsung Elecs. Am., Inc.*,
    2013 WL 5947005 (D.N.J. Nov. 6, 2013) .......................................................18

*Evans v. Gen. Motors Corp.*,
    459 F. Supp. 2d 407 (D. Md. 2006)..................................................................28

*Fisher v. Honda N. Am., Inc.*,
    No. 13-cv-09285 JAK(PLAx), 2014 WL 2808188, *6 (C.D. Cal.
    June 12, 2014)................................................................................................21

*FLF, Inc. v. World Publ'ns, Inc.*,
    999 F. Supp. 640 (D. Md. 1998)......................................................................32

*In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab.
    Litig.*,
    MDL No. 1718, 2007 WL 2421480 (E.D. Mich. Aug. 24, 2007)..................7, 25

*Ford Motor Co. v. Gen.l Accident Ins. Co.*,
    365 Md. 321 (2001) ..........................................................................................8

*Garcia v. Chrysler Grp. LLC*,
    127 F. Supp. 3d 212, 234 (S.D.N.Y. 2015) .................................................14, 25

*In re Gen. Motors LLC Ignition Switch Litig.*,
  257 F. Supp. 3d 372, 412 (S.D.N.Y. 2017) .......................................................18

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
  8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) ...........................................................27

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
  98 N.Y.2d 314 (2002) .......................................................................................31

*Greene v. BMW of N. Am.*,
  No. 2:11-04220 (WJM), 2012 WL 5986461 (D.N.J. Nov. 28, 2012) ...............23

*Grodzitsky v. Am. Honda Motor Co.*,
  2013 WL 690822 (C.D. Cal. Feb. 19, 2013) .....................................................18

*Huffman v. Electrolux N. Am., Inc.*,
  961 F. Supp. 2d 875 (N.D. Ohio 2013), *on reconsideration sub*
  *nom. Huffman v. Electrolux Home Prods., Inc.*, No. 3:12-cv-2681,
  2013 WL 5591939 (N.D. Ohio Sept. 30, 2013) ...................................................9

*J & K Parris Constr., Inc. v. Roe Ave., Assoc.*,
  2015 WL 3551627,No. 22658 (N.Y. Sup. Ct. May 19, 2015) ..........................33

*Johnson v. Microsoft Corp.*,
  106 Ohio St. 3d 278 (2005) ...............................................................................34

*Jones v. Koons Auto., Inc.*,
  752 F. Supp. 2d 670 (D. Md. 2010)....................................................................30

*Kampuries v. Am. Honda Motor Co.*,
  No. 15-cv-5061 (JFB) (AKT), 2016 WL 4613361 (E.D.N.Y. Sept.
  6, 2016) ..............................................................................................................25

*Kings Auto. Holdings, LLC v. Westbury Jeep Chrysler Dodge, Inc.*,
  48 Misc. 3d 1207(A), (N.Y. Sup. Ct. June 29, 2015).........................................34

*Knife Rights, Inc. v. Vance*,
  802 F.3d 377 (2d Cir. 2015) ..............................................................................31

*League of United Latin Am. Citizens v. Bredesen*,
  500 F.3d 523 (6th Cir. 2007) ...............................................................................7

*Lloyd v. General Motors Corp.*,
575 F. Supp. 2d 714 (D. Md. 2008) ............................................................ 12, 13

*Mandani v. Volkswagen Grp. of Am., Inc.*,
No. 17-CV-07287-HSG, 2019 WL 652867 (N.D. Cal. Feb. 15,
2019) ...................................................................................................................... 23

*Marshall v. Hyundai Motor Am.*,
51 F. Supp. 3d 451, 471-72 (S.D.N.Y. 2014) ...................................................... 33

*Martin v. Ford Motor Co.*,
292 F.R.D. 252 (E.D. Pa. 2013) ...................................................................... 5, 31

*McKee v. General Motors LLC*,
2019 WL 1326679 (E.D. Mich. Mar. 25, 2019) .................................................. 15

*McMahon v. CitiMortgage, Inc.*,
No. 10-14265, No. 10-14265, 2011 WL 2173916 (E.D. Mich. June
2, 2011) ................................................................................................................... 7

*Michelson v. Volkswagen Aktiengesellschaft*,
108 N.E.3d 84 (Ohio 2018) ................................................................................. 29

*Oliver v. Funai Corp.*,
No. 14-cv-04532, 2015 WL 9304541 (D.N.J. Dec. 21, 2015) ........................... 17

*Paikai v. General Motors Corp.*,
No. CIV S-07-892 FCD GGH, 2009 WL 275761, at *6 (E.D. Cal.
Feb. 5, 2009) ......................................................................................................... 34

*Pattie v. Coach, Inc.*,
29 F. Supp. 3d 1051, 1055 (N.D. Ohio 2014) ..................................................... 29

*Pollock v. Kanter*,
68 Ohio App. 3d 673 (1990) ................................................................................ 15

*Pungitore v. Barbera*,
506 Fed. Appx. 40 (2d Cir. 2012) ........................................................................ 31

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
683 F.3d 239 (6th Cir. 2012) ............................................................................... 15

*Resnick v. Hyundai Motor Am., Inc.*,
　　No. 16-cv-00593-BRO, 2016 WL 9455016 (C.D. Cal. Nov. 14,
　　2016) ................................................................................................17

*RFC Capital Corp. v. EarthLink, Inc.*,
　　No. 03AP-735, 2004 WL 2980402 (Ohio Ct. App. Dec. 23, 2004)...................33

*Robins v. Global Fitness Holdings, LLC*,
　　838 F. Supp. 2d 631 (N.D. Ohio 2012) .............................................................29

*Rosenbaum v. Toyota Motor Sales, USA, Inc.*,
　　No. 16-cv-12645, 2016 WL 9775018 (E.D. Mich. Oct. 21, 2016) ...............8, 34

*Scott v. Fields*,
　　92 A.D.3d 666 (N.Y. App. Div. 2012) ..............................................................32

*Siriano v. Goodman Mfg. Co.*,
　　No. 2:14-cv-1131, 2015 WL 12748033 (S.D. Ohio Aug. 18, 2015)..................13

*Sloan, et al., v. Gen. Motors, LLC*,
　　2017 WL 3283998 (N.D. Cal., Aug. 1, 2017) ..............................................18, 21

*Solomon v. Capital One Bank USA*,
　　No. GJH-14-03638, 2014 WL 7336694 (D. Md. Dec. 19, 2014) ......................28

*Spaulding v. Wells Fargo Bank, N.A.*,
　　714 F.3d 769 (4th Cir. 2013) .............................................................................26

*State v. Philip Morris Inc.*,
　　1997 WL 540913, No. 96122017 (Md. Cir. Ct. May 21, 1997)........................33

*Stevenson v. Mazda Motor of Am., Inc.*,
　　2015 WL 3487756 (D.N.J. June 2, 2015)...........................................................18

*Stewart v. Bierman*,
　　859 F. Supp. 2d 754 (D. Md. 2012), *aff'd sub nom. Lembach v.*
　　*Bierman*, 528 F. App'x 297 (4th Cir. 2013) .......................................................26

*Stewart v. Electrolux Home Prods., Inc.*,
　　No. 1:17-cv-01213-LJO-SKO, 2018 WL 1784273 (E.D. Cal. Apr.
　　13, 2018) .............................................................................................................23

*Storey v. Attends Healthcare Prods., Inc.*,
   No. 15-cv-13577, 2016 WL 3125210 (E.D. Mich. June 3, 2016)......................16

*Susan B. Anthony List v. Driehaus*,
   134 S.Ct. 2334 (2014)................................................................................31

*Szymczak v. Nissan N. Am., Inc.*,
   No. 10 cv 7943(VB), 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ..................8

*Weaver v. Chrysler Corp.*,
   172 F.R.D. 96 (S.D.N.Y. 1997) ...............................................................15, 27

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) ......................................................................18

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ................................................................17, 23

*Wright v. Publishers Clearing House, Inc.*,
   2019 WL 1177716 (E.D.N.Y. Mar. 12, 2019)................................................27

*Yates v. Ortho-McNeil-Janssen Pharm., Inc.*,
   808 F.3d 281 (6th Cir. 2015) ..........................................................................8

*Yellow Book Sales and Distrib. Co., Inc. v. Hillside Van Lines, Inc.*,
   98 A.D.3d 663 (N.Y. App. Div. 2012) ...........................................................26

*Zanger v. Gulf Stream Coach, Inc.*,
   No. 05-72300, 2006 WL 1494952 (E.D. Mich. May 25, 2006)........................13

**Statutes**

15 U.S.C. § 2310(d)(3)(C) ...................................................................................1

Md. Code Ann., Com. Law § 2-607 ....................................................................11

N.Y. U.C.C. Law § 2-316 ....................................................................................9

New York's General Business Law §§ 349 and 350.........................................26, 31

Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01 *et
   seq.* ................................................................................................................29

Ohio Rev. Code Ann. § 1302.29..........................................................................9

Ohio Rev. Code Ann. § 1345.05 ................................................................29

Ohio Rev. Code Ann. § 1345.09 ................................................................29

**Other Authorities**

Rule 8 ..........................................................................................2, 26, 28

Rule 9(b) ..................................................................................*passim*

Rule 12(b)(6) ....................................................................................1

## STATEMENT OF ISSUES PRESENTED

### Implied Warranty Claims

1.   Should this Court dismiss plaintiffs' implied warranty claims in Counts 4, 9, and 14 for failure to allege that the vehicles were unmerchantable at the time they left GM's control?

2.   Should this Court dismiss the plaintiffs' implied warranty claims in Counts 4 and 14 because they are time-barred under the laws of New York and Ohio?

3.   Should this Court dismiss plaintiffs' implied warranty claims in Counts 4 and 14 because the laws of New York and Ohio preclude such claims against a remote manufacturer, and where, as here, plaintiffs purchased a product from an independent GM dealer or other unaffiliated third party?

4.   Should this Court dismiss plaintiff Anderson's implied warranty claim in Count 9 for failure to provide notice as required under Maryland law?

### Magnuson-Moss Warranty Act Claim

5.   Should this Court dismiss plaintiffs' claim under the Magnuson-Moss Warranty Act in Count 15 because plaintiffs have not alleged viable state law warranty claims?

6.   Should this Court dismiss plaintiffs' claim under the Magnuson-Moss Warranty Act in Count 15 because plaintiffs cannot satisfy the statutory prerequisites?

### Fraudulent Concealment Claims

7.   Should this Court dismiss plaintiffs' fraudulent concealment claims in Counts 2, 7, and 11 because plaintiffs do not allege facts sufficient to establish misrepresentation, omission, reliance, causation or a duty to disclose as required by Rule 9(b)?

8.   Should this Court dismiss plaintiffs' fraudulent concealment claims in Counts 2, 7, and 11 for failure to allege a duty to disclose: (i) because they do not allege GM's knowledge of a defect and/or (ii) for Counts 7 and 11, because the laws of Ohio and New York preclude any finding of a duty to disclose on the part of a remote manufacturer?

**State Consumer Protection Act Claims**

9.   Should this Court dismiss plaintiffs' consumer protection law claims in Counts 1, 5, and 6 because they do not adequately plead deceptive conduct, reliance, causation or injury as required by Rule 9(b) and/or Rule 8?

10.  Should this Court dismiss plaintiffs' consumer protection law claims in Counts 1, 5, and 6 because plaintiffs do not allege the GM had pre-sale knowledge of a defect?

11.  Should this Court dismiss plaintiff Williams' claim under the Ohio Deceptive Trade Practices Act in Count 10 because that statute fails to provide a cause of action for consumer injury?

12.  Should this Court dismiss plaintiff Anderson's claim under the Maryland Consumer Protection Act in Count 1 because she cannot demonstrate the requisite injury?

13.  Should this Court dismiss plaintiff LaTorre's claim for equitable relief under New York General Business Law in Counts 5 and 6 because she cannot show future injury?

**Unjust Enrichment Claims**

14.  Should this Court dismiss plaintiffs' unjust enrichment claims in Counts 3, 8, and 13 because they are precluded by an express contract or an adequate remedy at law, and for Counts 8 and 13 because plaintiffs do not allege they conferred a direct benefit on or have the requisite relationship with GM?

General Motors LLC answers "yes" to each of these questions.

**STATEMENT OF
<u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>**

The controlling or most appropriate authorities for the relief sought by GM include:

1. *Aracena v. BMW of N. Am., LLC*, 159 A.D.3d 664 (N.Y. App. Div. 2018)

2. *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 753-54 (E.D. Mich. 2017)

3. *Duffie v. Mich. Grp., Inc. – Livingston*, No. 14-cv-14148, 2016 WL 8259511 (E.D. Mich. Jan. 15, 2016)

4. Federal Rule of Civil Procedure 8

5. Federal Rule of Civil Procedure 9(b)

6. Federal Rule of Civil Procedure 12(b)(6)

7. *Lloyd v. General Motors Corp.*, 575 F. Supp. 2d 714 (D. Md. 2008)

8. Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et. seq.*

9. *Republic Bank & Tr. Co. v. Bear Stearns & Co*., 683 F.3d 239 (6th Cir. 2012)

10. *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, No. 16-cv-12645, 2016 WL 9775018 (E.D. Mich. Oct. 21, 2016)

11. *Storey v. Attends Healthcare Prods., Inc.*, No. 15-cv-13577, 2016 WL 3125210 (E.D. Mich. June 3, 2016)

12. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017)

13. *Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281 (6th Cir. 2015)

14. *Zanger v. Gulf Stream Coach, Inc*., No. 05-72300, 2006 WL 1494952 (E.D. Mich. May 25, 2006)

## **INTRODUCTION**

Plaintiffs are three individuals who each purchased a new or used Cadillac SRX (a mid-sized SUV) and who now claim, after each vehicle has been driven for many years and tens of thousands of miles, that their headlights do not adequately illuminate the road at night.  Plaintiffs claim that this issue is not specific to their vehicles, but is symptomatic of a headlight defect found in hundreds of thousands of 2010-2015 Cadillac SRX vehicles (the "Class Vehicles").

Based on the alleged headlight defect, plaintiffs assert 13 causes of action[1] under the laws of three states—Maryland, New York, and Ohio—and a federal claim under the Magnuson-Moss Warranty Act ("MMWA") on behalf of three putative statewide classes of Maryland, New York, and Ohio residents who purchased or leased Class Vehicles.

All 14 claims should be dismissed under Rule 12(b)(6).

*First*, plaintiffs' claims for breach of implied warranty (Counts 4, 9, and 14) fail because plaintiffs do not allege that the vehicles were unmerchantable at the time they left GM's control.  The claims of New York and Ohio plaintiffs in Counts 9 and 14 also fail because (1) they are time-barred, and (2) New York and Ohio law bar claims against remote vehicle manufacturers from which consumers

---

[1] Although the Complaint includes causes of action labeled one through fifteen, there is no twelfth cause of action.

did not directly purchase their vehicles.  Plaintiff Anderson's claim in Count 4 fails for the additional reason that she did not provide notice of the alleged breach as required under Maryland law.

*Second*, plaintiffs' claim under the MMWA (Count 15) fails because there is no viable underlying state law breach of warranty claim, and plaintiffs do not meet the statutory prerequisites for a MMWA claim.

*Third*, plaintiffs do not plead fraudulent concealment (Counts 2, 7, and 11) with the particularity required by Rule 9(b).  They also do not allege either the relationship with GM or the knowledge of a defect at the time of sale that might give rise to a duty to disclose.

*Fourth*, plaintiffs' claims under state consumer protection laws (Counts 1, 5, 6, and 10) similarly fail to plead the essential elements in satisfaction of Rule 9(b) or Rule 8, and do not meet the substantive requirements of the applicable state laws and/or for the type of relief sought under these laws.

*Finally*, plaintiffs' unjust enrichment claims (Counts 3, 8, and 13) are precluded by an express contract and an adequate remedy at law.  The claims of New York and Ohio plaintiffs in Counts 8 and 13 also fail because plaintiffs do not allege they conferred a benefit directly on GM or that a sufficient connection exists between plaintiffs and GM.

## STATEMENT OF FACTS

Plaintiffs allege that the Cadillac SRX (model years 2010-2015) is equipped with defective headlights.  Compl. ¶ 3.  They allege specifically that "the seals GM uses in the . . . headlights' exterior housing units wear out prematurely, thereby allowing moisture to accumulate and condense" and that moisture "causes the headlights to malfunction and/or fail because it corrodes the lamp assembly components and/or because it causes electrical shorts."  *Id.*  Plaintiffs do not allege that GM made affirmative misrepresentations about the headlights, but rather that GM "failed to disclose" the alleged headlight defect.  *Id.* ¶¶ 56, 66, 76.  Plaintiffs do not state what specific facts GM allegedly omitted, who at GM withheld these facts, or when or where GM failed to disclose them.  *See id.* ¶¶ 47-77.  None of the plaintiffs specify any GM communication or advertisement that they allegedly saw, read, heard, or relied upon, or which should have addressed the supposedly defective headlights.  *See id.*

Plaintiffs allege that GM has known about the alleged headlight defect "[s]ince at least 2010."  *Id.* ¶ 80.  According to the Complaint, this knowledge came through "pre-production design failure mode and analysis data," "production design failure mode and analysis data," "pre-release testing data," "early consumer complaints," "testing conduct in response to those complaints," "high failure rates

and replacement part sales data," and "other aggregate data from Cadillac dealers." *Id*.

Plaintiffs also allege that, GM released iterations of a Technical Service Bulletin regarding low beam headlamps in 2010 and that, in 2011, GM conducted a Customer Service Campaign that covered the 2010 Cadillac SRX (and other make and model vehicles not at issue in this putative class action). *Id.* ¶¶ 82-83. According to the Complaint, in connection with the Customer Service Campaign, GM "offered to replace the headlamp connectors and low beam bulbs free of charge or to reimburse customers who previously had paid for this repair." *Id.* ¶ 82. Plaintiffs claim this Customer Service Campaign was inadequate because it did not fix the "root cause of the malfunction or exclude the accumulation of moisture and/or condensation in the housing." *Id.*

Plaintiffs further allege that in the weeks before plaintiffs filed their Complaint, GM sent a notice to some putative class members and offered to reimburse them for (1) prior out-of-pocket headlight replacement costs, and (2) the cost of diagnoses and replacement of the headlights experiencing the same issue. *Id.* ¶ 86.  Plaintiffs claim this remedy is inadequate because any reimbursement is

limited to $1,600 and "[o]nly some Class Members, and none of the Plaintiffs, received such a notice." *Id.* ¶¶ 88-90.[2]

As for the named plaintiffs themselves, the Complaint contains few facts. Plaintiff Anderson alleges that she purchased a new 2015 Cadillac SRX from a Cadillac dealership in Maryland in 2015, and that three to four years later, she noticed the headlights were "failing to illuminate the road at night." *Id.* ¶¶ 58, 61. The Complaint contains no information regarding the mileage on plaintiff Anderson's Cadillac SRX at the time she experienced this issue, only that she brought her vehicle into a dealership and declined to pay to repair the headlights because of the "steep cost [$1,500] and the fact the parts would eventually fail again." *Id.* ¶ 62. Although plaintiff Anderson alleges that her headlights "continue to malfunction," she does not allege that they have failed to operate. *Id.* ¶ 64.

Plaintiff LaTorre alleges that she purchased a used 2011 or 2015 Cadillac SRX[3] in 2017 from a Cadillac dealership in New York, and that the vehicle had approximately 53,000 miles at the time. *Id.* ¶¶ 47, 50. According to the Complaint, the driver's side headlight on her vehicle failed in November 2017, but

---

[2] The availability of a remedy for some putative class members but not others undermines plaintiffs' assertion that this case may be certified as a class action. *See Diagle v. Ford Motor Co.*, 2012 WL 3113854, at *5 (D. Minn. July 31, 2012); *Martin v. Ford Motor Co.*, 292 F.R.D. 252, 282-85 (E.D. Pa. 2013).

[3] In paragraph 47 of the Complaint, plaintiff LaTorre alleges that she purchased a 2015 Cadillac SRX, but in paragraph 50 she refers to her 2011 Cadillac SRX. *Compare id.* ¶ 47 *with id.* ¶ 50.

was replaced by the dealership for free. *Id.* ¶ 51. Plaintiff also alleges that in January 2018 she noticed that the passenger light looked dim, but she does not provide the mileage on the vehicle at the time, or allege that she ever brought her vehicle to the dealership for repair. *Id.* ¶ 52. Although plaintiff LaTorre claims the headlights "continue to malfunction," she does not allege that they have failed to operate. *Id.* ¶ 54.

Plaintiff Williams alleges that she purchased a used 2011 Cadillac SRX with approximately 80,000 miles from a Toyota dealership in Ohio in 2017. *Id.* ¶¶ 67, 70. She also alleges that "shortly after" purchase her driver's headlight went dim and eventually stopped working. *Id.* ¶ 71. According to the Complaint, plaintiff Williams took her vehicle into the dealership and paid $1,398.60, but she does not specify when this occurred or the mileage on the vehicle at that time. *Id.* Plaintiff Williams further alleges that in December 2018, the driver's side headlight stopped working, but she does not specify the mileage on the vehicle at the time, or allege that she ever brought her vehicle to the dealership for repair. *Id.* ¶ 72. Although plaintiff Williams claims the headlights "continue to malfunction," she does not allege that they have failed to operate. *Id.* ¶ 74.

None of the plaintiffs allege that they intend to purchase another Cadillac SRX. Rather, they claim that had they known about the alleged headlight defect they would not have purchased their vehicles or would have paid less for them. *Id.*

¶¶ 56, 66, 76. Plaintiffs seek declaratory and injunctive relief as well as actual and statutory damages, punitive damages, and restitution. *Id.* at 66-67.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, plaintiffs' non-conclusory "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). The Court must accept well-pleaded facts as true, but it may not assume that "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Claims that sound in fraud, including fraudulent concealment and statutory consumer protections claims premised on fraud allegations, must also meet the heightened pleading standard of Rule 9(b). *McMahon v. CitiMortgage, Inc.*, No. 10-14265, No. 10-14265, 2011 WL 2173916, at *3 (E.D. Mich. June 2, 2011) (fraudulent omission); *In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*, MDL No. 1718, 2007 WL 2421480, at *9 (E.D. Mich. Aug. 24, 2007) (state consumer protection claims). Plaintiffs must plead such claims with particularity, and identify the who, what, when, where, and how of the allegedly fraudulent conduct. Fed. R. Civ. P. 9(b).

## ARGUMENT

I. **PLAINTIFFS DO NOT PLEAD VIABLE STATE LAW IMPLIED WARRANTY CLAIMS (Counts 4, 9, and 14).**

### A. Plaintiffs Do Not Allege That The Vehicles Were Unmerchantable At The Time They Left GM's Control.

The implied warranty of merchantability provides for a minimal level of quality; it does not require that the goods "fill a buyer's every expectation." *Szymczak v. Nissan N. Am., Inc.*, No. 10 cv 7943(VB), 2011 WL 7095432, at *10 (S.D.N.Y. Dec. 16, 2011); *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, No. 16-cv-12645, 2016 WL 9775018, at *2 (E.D. Mich. Oct. 21, 2016) ("Merchantable is not a synonym for perfect.  The warranty of merchantability is that goods are of average quality in the industry" and fit for their "ordinary purpose").

Plaintiffs must plead, and ultimately prove, that the product manifests a defect that existed "at the time it left the manufacturer's control."  *Ford Motor Co. v. Gen.l Accident Ins. Co.*, 365 Md. 321, 334 (2001); *Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 302 (6th Cir. 2015) (The plaintiff must show, among other things, "that the defect complained of existed at the time the product left the manufacturer or entity in the line of distribution being sued").  In cases involving vehicle sales, a product defect cannot be inferred based on evidence of a malfunction in a well-used vehicle. *Crickenberger v. Hyundai Motor Am.*, 404 Md. 37, 52 (2008).  Where vehicles have been operated for several years and tens

8

of thousands of miles before any issues occur, the vehicles are fit for their intended purposes. *Chiarelli v. Nissan N. Am., Inc.*, No. 14-cv-4327 (NGG)(VVP), 2015 WL 5686507, at *8 (E.D.N.Y. Sept. 25, 2015).

Plaintiffs allege issues with their vehicles only after those vehicles had been driven for a number of years. Plaintiffs LaTorre and Williams purchased used vehicles with 53,000 and 80,000 miles, respectively. Compl. ¶¶ 50, 70. Plaintiff Anderson alleges that she only experienced an issue three or four years after purchase. *See id.* ¶¶ 58, 61. Thus, with respect to the issues allegedly experienced in each of plaintiff's vehicles, a number of years had passed since they left GM's control. Plaintiffs have therefore failed to plausibly allege that their vehicles were unmerchantable when they left GM's control.

**B.    Plaintiffs LaTorre And Williams' Claims For Breach Of Implied Warranty Are Time-Barred.**

The implied warranty claims of plaintiffs LaTorre and Williams (Counts 9 and 14) are time-barred under the applicable laws. In New York and Ohio, a manufacturer is free to limit the duration of any implied warranty to the duration of the express warranty so long as the language of the written warranty is conspicuous and specifically mentions merchantability. *See* N.Y. U.C.C. Law § 2-316; Ohio Rev. Code Ann. § 1302.29. Defects manifesting outside of the warranty period cannot form the basis for a claim of breach of implied warranty of merchantability. *See Chiarelli*, 2015 WL 5686507 at *8; *Huffman v. Electrolux N. Am., Inc.*, 961 F.

Supp. 2d 875, 887 (N.D. Ohio 2013), *on reconsideration sub nom. Huffman v. Electrolux Home Prods., Inc.*, No. 3:12-cv-2681, 2013 WL 5591939 (N.D. Ohio Sept. 30, 2013).

Here, GM issued an express limited warranty with respect to each 2010-2015 model year Cadillac SRX (the "Limited Warranty"). This Limited Warranty provided bumper-to-bumper coverage for "4 years or 50,000 miles, whichever comes first." *See, e.g.*, 2010 Cadillac Limited Warranty and Owner Assistance Information at 4.[4] It also included conspicuous and specific language stating that "[a]ny implied warranty of merchantability or fitness for a particular purpose applicable to this vehicle is limited in duration to the duration of this written warranty." *Id.* at 9.

The New York and Ohio plaintiffs cannot state a claim for breach of implied warranty because their warranty periods have expired. Indeed, plaintiffs LaTorre and Williams concede that at the time of the alleged malfunction, their vehicles were outside of their warranty periods. Compl. ¶¶ 47-50 (LaTorre alleges that she purchased her Cadillac SRX at 53,000 miles in 2017); 67-70 (Williams alleges that she purchased a six-year-old vehicle with 80,000 miles in 2017).

---

[4] Copies of the Limited Warranty for the Cadillac SRX (model years 2010-2015) are attached at **Exhibits 1 – 6**.

### C.   New York And Ohio Privity Requirements Bar The Implied Warranty Claims of Plaintiffs LaTorre And Williams.

Plaintiffs LaTorre and Williams also purchased their vehicles from independent dealerships (Compl. ¶¶ 47, 67) and therefore cannot allege the contractual privity with GM required for a breach of implied warranty claim in New York or Ohio.  In these states, damages are recoverable for breach of implied warranty only where there is privity of contract between the parties.  *See Aracena v. BMW of N. Am., LLC*, 159 A.D.3d 664, 666 (N.Y. App. Div. 2018); *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147 (Ohio 2007).  No such privity exists between a manufacturer and a remote purchaser.  *Aracena*, 159 A.D.3d at 666 (affirming dismissal of breach of warranty claims where customer purchased vehicle at issue from authorized dealer of defendant); *Curl*, 871 N.E.2d at 1147 (concluding automobile purchaser lacked privity required to sue manufacturer for breach of implied warranty of merchantability).

### D.   Plaintiff Anderson's Implied Warranty Claim Is Barred For Failure To Provide The Requisite Notice.

Plaintiff Anderson's implied warranty claim (Count 4) is precluded by her failure to provide the notice required under Maryland law.  The Uniform Commercial Code adopted in Maryland requires a purchaser to give notice to the seller of a breach of warranty.  Md. Code Ann., Com. Law § 2-607.  If a purchaser wants to claim breach of warranty against a vehicle manufacturer, he or she must

notify the immediate seller of the breach.  *See Lloyd v. General Motors Corp.*, 575 F. Supp. 2d 714, 723 (D. Md. 2008) (implied warranty claims barred as matter of Maryland law where plaintiffs failed to plead that they notified their immediate sellers – *i.e.*, the dealers who sold them the vehicles – of the alleged defect); *see also Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 542 (D. Md. 2011) (same).

The required notice must contain the purchaser's claim that her facts *constitute a breach* of the implied warranty.  *See Lloyd*, 575 F. Supp. 2d at 723. This requirement is not met by notice of problems experienced by the purchaser or a general awareness of the issue through prior, similar lawsuits.  *See Doll*, 814 F. Supp. 2d at 542 (notice requirement not met by having vehicle towed to the dealership and paying for the repair of a particular component); *Lloyd*, 575 F. Supp. 2d at 723 ("[t]he notice of the breach required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of *the buyer's* claim that they constitute a breach") (quoting *Am. Mfg. Co. v. U.S. Shipping Bd. E.F. Corp.*, 7 F.2d 565, 566 (2d Cir. 1925)).

Here, plaintiff Anderson alleges only that she "brought her car to Waldorf Cadillac" in May 2018.  (Compl. ¶ 62).  There is no allegation stating that plaintiff Anderson informed the dealership that there was a breach of implied warranty, and no allegation that any particular component was impaired and the nature of the nonconformity.  *Doll*, 814 F. Supp. 2d at 542.  Instead, plaintiffs allege that GM

was "on notice" based on complaints filed with the National Highway Traffic

Safety Administration ("NHSTA").  (Compl. ¶ 160).  This allegation does not meet

the requirements of Maryland law.  *Lloyd*, 575 F. Supp. 2d at 723.

## II.   PLAINTIFFS DO NOT PLEAD A VIABLE CLAIM UNDER THE MAGNUSON-MOSS WARRANTY ACT (Count 15).

### A.   Plaintiffs Do Not Allege A Viable State Law Warranty Claim.

Plaintiffs' Magnuson-Moss Warranty Act claim in Count 15 fails because

such claim is "directly dependent upon a sustainable claim for breach of warranty"

under state law.  *Zanger v. Gulf Stream Coach, Inc.*, No. 05-72300, 2006 WL

1494952, at *7 (E.D. Mich. May 25, 2006).  Thus, "if there exists no actionable

[state law] warranty claim, there can be no violation of the Magnuson-Moss Act."

*Id.*; *see also Dean v. Beckley*, Civil No. CCB-10-297, 2010 WL 3928650, at *8 (D.

Md. Oct. 1, 2010) (to sustain a MMWA claim, plaintiff must first establish a

breach of limited or implied warranty under Maryland law); *Cali v. Chrysler Grp.*

*LLC*, 2011 WL 383952, at *4 (S.D.N.Y. Jan. 18, 2011) (MMWA claims "stand or

fall" with state law express or implied warranty claims); *Siriano v. Goodman Mfg.*

*Co.*, No. 2:14-cv-1131, 2015 WL 12748033, at *14 (S.D. Ohio Aug. 18, 2015)

(same).  Plaintiffs base their MMWA claims on the same flawed theory as their

implied warranty claims.  As a result, their MMWA claims fail along with their

implied warranty claims.

**B.      Plaintiffs Cannot Satisfy The Statutory Prerequisites For A Class Action Under The MMWA.**

Plaintiffs are precluded from pursuing a MMWA class action claim because they cannot satisfy the statute's express jurisdictional prerequisites for doing so. 15 U.S.C. § 2310(d)(3)(C).  To maintain a class action under the MMWA in a United States District Court, the amount of each individual claim must be at least $25, the total amount in controversy must be at least $50,000, and the number of named plaintiffs must be at least 100.  *Id.*

With only three named plaintiffs—Anderson, LaTorre, and Williams—the purported class action is not cognizable in this Court under Magnuson-Moss.

**III.    PLAINTIFFS DO NOT STATE A CLAIM FOR FRAUDULENT CONCEALMENT (Counts 2, 7, and 11).**

To state viable fraudulent concealment claims, plaintiffs must assert that: (i) GM omitted a material fact from a specific communication; (ii) plaintiffs relied on the omission to their detriment and/or the omission caused plaintiffs' injuries; and (iii) GM had a duty to disclose the material fact.  *200 N. Gilmor, LLC v. Capital One, Nat. Ass'n*, 863 F. Supp. 2d 480, 490 (D. Md. 2012); *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 234 (S.D.N.Y. 2015); *Bellinger v. Hewlett Packard Co.*, No. 20744, 2002 WL 533403, at *5 (Ohio Ct. App. Apr. 10, 2002).  Because these claims sound in fraud, plaintiffs must allege them with the particularity required by Rule 9(b).  *All-U-Need Temporary Servs. v. First Transit, Inc.*, No. 09-cv-3229

14

(DKC), 2010 WL 2560089, at *4 (D. Md. June 18, 2010); *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 559-60 (S.D.N.Y. 2016); *Bellinger*, 2002 WL 533403, at *4.  Plaintiffs do not meet these requirements.

**A.    Plaintiffs Do Not Meet The Particularity Requirements Of Rule 9(b).**

Plaintiffs' conclusory allegations in support of their fraudulent concealment claims do not meet the heightened pleading standard of Rule 9(b).  Rule 9(b) requires plaintiffs to state with particularity "the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The complaint must contain "the who, what, when, where, and how" of any alleged misrepresentation or omission. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012).[5]

Here, plaintiffs also do not say when or where they allegedly encountered any specific GM communication, how they were misled, or what GM gained as a result.  In other words, plaintiffs fail to allege any facts to establish their individual reliance on any alleged omission or a causal connection between any alleged

---

[5] *See also McKee v. General Motors LLC*, 2019 WL 1326679, *8 (E.D. Mich. Mar. 25, 2019) (plaintiff's common law fraud claim failed where the "[p]laintiff did not properly plead the 'what' of the alleged omission, namely, GM's knowledge of the" defect); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 102 (S.D.N.Y. 1997) (dismissing claim where plaintiff failed to "specifically identi[f]y the representations, advertisements, and promotional materials that omitted the reference to the defect[], misled him, and upon which he relied"); *Pollock v. Kanter*, 68 Ohio App. 3d 673, 681-82 (1990) (complaint must identify (1) the specific statements claimed to be false, (2) the time and place the statements were made, and (3) which defendant made the false statements).

omission and any claimed injury.  The Complaint does not provide any details concerning the "'who, what, when, where, and how' of [any] alleged fraud." *Id.* Instead, the plaintiffs make the same vague and conclusory allegations that they "relied on GM's representations" in unidentified "television commercials, magazine advertisements, and magazine reviews" that GM's vehicles "would be free from defects and safe." Compl. ¶¶ 48-49, 59-60, 68-69.

These allegations do not plead with the particularity the contents of the alleged communications, whether they were actually relied upon by plaintiffs, or their date, time, and place. The Court should dismiss the plaintiffs' fraudulent concealment claims for failure to do so.

### B.   Plaintiffs Do Not Allege GM Had Knowledge Of A Defect At The Time Of Sale.

To state a fraudulent concealment claim, a plaintiff must sufficiently allege that a defendant was aware of a defect at the time of sale.  *See Storey v. Attends Healthcare Prods., Inc.*, No. 15-cv-13577, 2016 WL 3125210, at *10 (E.D. Mich. June 3, 2016) (defendants "cannot be faulted for failing to reveal material 'facts' that did not exist"); *Bryde v. Gen. Motors LLC*, No. 16-cv-02421 (WHO), 2016 WL 6804584, at *9 (N.D. Cal. Nov. 17, 2016) ("a plaintiff must sufficiently allege that a defendant was aware of a defect at the time of sale").

Plaintiffs in this case merely speculate that GM knew of a widespread defect in all Class Vehicles based on (a) NHTSA and third-party website complaints, (b)

a 2011 Customer Satisfaction Campaign ("CSC") regarding electrical connections in halogen lights and service bulletins to GM dealerships, and (c) unidentified testing information, failure rates, and aggregate data from Cadillac dealers. Compl. ¶¶ 5-7, 8-9, 16, 80-85, 93, and 97. These allegations do not raise a plausible inference of knowledge.

### 1.    NHTSA and Third-Party Website Complaints

In their Complaint, plaintiffs cite 25 NHTSA complaints (Compl. ¶¶ 5, 78) and attach a series of complaints posted to third-party websites. *Id.* ¶¶ 6-7 and at Exs. 1-3. Courts have routinely rejected reliance on such information to show a defendant's pre-sale knowledge. *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) ("Customer complaints in and of themselves [do not] adequately support an inference that a manufacturer was aware of a defect . . ."); *Oliver v. Funai Corp.*, No. 14-cv-04532, 2015 WL 9304541, *4 (D.N.J. Dec. 21, 2015) ("imputing knowledge" based on "internet posting[s] would mean that virtually every consumer product company would be subject to fraud claims and extensive discovery. All any plaintiff would be required to show is that a product broke once and that someone had complained about it on the internet"). This is especially true where plaintiffs cannot show that the defendant monitored the websites, much less saw the posts in question. *See Resnick v. Hyundai Motor Am., Inc.*, No. 16-cv-00593-BRO (PJWx), 2016 WL 9455016, at *13 (C.D. Cal.

17

Nov. 14, 2016) ("Plaintiffs have not presented any facts indicating that Hyundai monitored these websites or was aware of these complaints"); *Oliver*, 2015 WL 9304541, at *3 (consumer reviews are insufficient to show pre-sale knowledge where plaintiffs failed to allege that defendant monitored website).

Even large numbers of complaints posted on a manufacturer's own website have been found insufficient because they "merely establish the fact that some consumers were complaining." *Berenblat v. Apple, Inc.*, Nos. 08-4969 JF (PVT), 09-1649 JC (PVT), 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010) (hundreds of customer complaints posted on defendant's website "at most" established knowledge of a *problem*, not of a *defect*).  An "unusually high number of complaints" is necessary for an inference of a defendant's pre-sale knowledge.  *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1026 (9th Cir. 2017).[6]

To the extent that courts have permitted plaintiffs to plead knowledge based on combination of published consumer complaints and other facts, the complaints must concern *the specific defect* at issue and *pre-date* the plaintiffs' purchase.  *See*

---

[6] *See also Sloan, et al., v. Gen. Motors, LLC*, 2017 WL 3283998, at *7 (N.D. Cal., Aug. 1, 2017) ("81 complaints posted over the course of seven years . . . do not show GM's knowledge of the alleged defect"); *Blissard v. FCA US LLC*, 2018 WL 6177295, at *13 (C.D. Cal. Nov. 9, 2018) (requiring plaintiffs allege that the defendant itself saw the number of complaints as "significant" and "beyond the norm")

*In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 412 (S.D.N.Y. 2017).[7]

The 25 NHSTA complaints cited by plaintiffs span a five year period – a rate of *five per year*. Compl. ¶¶ 5, 78. And plaintiffs allege no facts to suggest these NHTSA complaints out of the hundreds of thousands of Class Vehicles sold in the United States (*Id.* ¶ 2) would constitute the "unusually high" number of complaints needed to provide GM with sufficient notice of a defect. Fifteen of those complaints were submitted between November 2017 and January 2019, *after* all plaintiffs had already purchased or leased their vehicles. *Id.* ¶¶ 47, 58, 67, and 78. Of the remaining ten complaints, only three concern a model year Cadillac purchased by the named plaintiffs—the 2011 Cadillac SRX—and none of those specifically address the defect alleged; customers merely state that their headlights failed to illuminate as fully as desired. *Id.* ¶ 78. Since these complaints are not "unreasonably high" in number, do not describe the specific defect alleged by plaintiffs, and were largely submitted to NHTSA after plaintiffs acquired their vehicle, they cannot show GM knowledge of the defect at the time of purchase.

---

[7] *See also Durso v. Samsung Elecs. Am., Inc.*, 2013 WL 5947005, at * 10 (D.N.J. Nov. 6, 2013); *Grodzitsky v. Am. Honda Motor Co.*, 2013 WL 690822, at *6-7 (C.D. Cal. Feb. 19, 2013); *Stevenson v. Mazda Motor of Am., Inc.*, 2015 WL 3487756, at *7 (D.N.J. June 2, 2015); *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 753-54 (E.D. Mich. 2017)

Plaintiffs' allegations based on postings to websites "carcomplaints.com" and "carproblemzoo.com" are also insufficient to plead GM's knowledge of a defect at the time of sale.  These websites have no affiliation with GM and plaintiffs do not allege that GM monitored the websites or saw the posts.  Of the complaints on "carcomplaints.com," not one refers to the specific model year vehicles that plaintiffs' actually own.  *Id.* at Exs. 1 and 3. To the contrary, these complaints concern two vehicles that no plaintiff purchased: the 2010 Cadillac SRX and the 2014 Cadillac SRX.  *Id.*   And of the complaints concerning these vehicles that pre-date the plaintiffs' purchases, none address the specific defect alleged.  *Id.*

Likewise, every single one of the complaints that plaintiffs' rely on from "carproblemzoo.com" were posted in 2019 – years after the plaintiffs' purchased their vehicles.  *Compare id.* ¶ 3 *with id.* at Ex. 2.  These complaints also deal with a variety of problems involving turn signals, fog lights, head lights, brake lights, and hazard warning lights.  *Id.*  Not one addresses headlights with "exterior housing units" that "wear out prematurely," "allow[] moisture to accumulate and condense," and "corrode[] the lamp assembly components and/or . . . cause[] electrical shorts."  *Compare id.* at Ex. 2 *with id.* ¶ 3.  This renders implausible plaintiffs' broad allegations that GM knew of the *specific* defect in their *specific* vehicles at the time of sale.

## 2.   2011 CSC and Technical Service Bulletins

Plaintiffs also allege that GM knew of a widespread defect because (1) in December 2011, GM issued a CSC concerning a "loss of electrical contact" between the halogen headlamp connectors and bulbs (*Id.* ¶ 82), and (2) between May 2010 and May 2015, GM issued several iterations of a single Technical Service Bulletin (TSB, Bulletin No. 10-08-42-001) that informed dealership service personnel that "customers may comment" that the "low beam headlamp is inoperative" *Id.* ¶ 83.[8]

As with NHTSA and other internet complaints, courts have rejected reliance on such information to show a defendant's pre-sale knowledge, especially where it does not specify the defect at issue. *See, e.g.*, *Sloan,* 2017 WL 3283998, at *7 (TSB does not support inference of knowledge unless it "explicitly addressed the claimed defect"); *Blissard*, 2018 WL 6177295, at *13 ("no statement in the cited [TSBs] that [the manufacturer] was aware of the specific defect alleged in the Complaint"); *Fisher v. Honda N. Am., Inc.*, No. 13-cv-09285 JAK(PLAx), 2014 WL 2808188, *6 (C.D. Cal. June 12, 2014) (TSB attributed the locking defect to locks "lock[ing] by themselves or cycl[ing] twice," while plaintiff alleged defect causing the locks to "fail to engage") (alteration in original).

---

[8] The subsequent iterations of the bulletin contained no new information regarding the issue.  They merely updated the list of makes, models, and provided parts and warranty information.

GM's CSC alerted purchasers of several make and model vehicles of a *possible* condition that could "could cause the headlamp and/or daytime running lamp to work intermittently." CSC No. 10043330-5822 (**Exhibit 7**); *see also* Compl. ¶ 82. But this campaign attributed the issue to a "loss of electrical contact" between the halogen headlamp connectors and bulbs (*id*.), not to "the seals . . . allowing moisture to accumulate and condense" as plaintiffs allege in the Complaint. *Id.* ¶ 3.

Similarly, the technical service bulletins that plaintiffs cite alert dealerships of *potential* customer complaints. They do not suggest that all Class Vehicles had issues or required repairs. To the contrary, the bulletins informed dealerships to provide specified remedies *only* in the event that a customer experienced a particular issue, for example by "remov[ing] the headlamp bulb," "inspect[ing] the connector," and replacing the bulb as well as the connector "if the connector is discolored." TSB Bulletin No. 10-08-42-001 (**Exhibit 8**).[9] Thus neither the CSC nor the bulletins can plausibly support an inference that GM knew of a pervasive design defect in all Class Vehicles.

The CSC and the bulletins are not applicable to most of the plaintiffs' claims because they applied only to certain make and model year vehicles. Of the Class

---

[9] Copies of the subsequent iterations of TSB Bulletin No. 10-08-42-001 (numbered A through E) are attached at **Exhibits 9 - 13**.

Vehicles, the CSC involved only the 2010 Cadillac SRX – a model year that none of the named plaintiffs allegedly purchased.  Compl. ¶¶ 47, 50, 58, and 67.  And the technical service bulletins applied to a large number of vehicles, but the only Class Vehicles listed are the 2010-2013 Cadillac SRX.  Compl. ¶ 83. According to the Complaint, plaintiff Anderson and possibly plaintiff LaTorre, each purchased a 2015 Cadillac SRX, a vehicle that is not listed in any of the bulletins that plaintiffs cite. This information therefore cannot plausibly establish GM's knowledge of the alleged defect.

### 3.     Product Testing

Plaintiffs allege that GM knew of the alleged "Headlight Defect" through "pre-production design failure mode and analysis data," "production design failure mode and analysis data," and "pre-release testing data," but plead no facts in support of their conclusion. Compl. ¶¶ 80, 93. These generic, conclusory allegations are insufficient to establish GM's knowledge. *See Mandani v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-07287-HSG, 2019 WL 652867, at *8 (N.D. Cal. Feb. 15, 2019) ("[C]onclusory allegations of pre-purchase knowledge based on 'pre-sale design and testing' are insufficient").[10]

---

[10] *See also Stewart v. Electrolux Home Prods., Inc.*, No. 1:17-cv-01213-LJO-SKO, 2018 WL 1784273, at *9 (E.D. Cal. Apr. 13, 2018) (rejecting "presumption of knowledge" based on "general allegations about [defendants'] internal testing or quality controls"); *Beck*, 273 F. Supp. 3d at 753 (generic allegations based on pre-
(Continued...)

Plaintiffs' generalized assertion regarding unspecified "pre-release testing data" and "aggregate data from [] dealers" does not suggest how this information could have alerted GM of the alleged defect at the time of sale. *Wilson*, 668 F.3d at 1146-47.

### C.     Plaintiffs Do Not Allege That GM Had A Duty To Disclose.

Plaintiffs do not allege that GM failed to provide information it had a duty to disclose. Such a duty is a necessary element of a fraudulent concealment claim under the laws of Maryland, New York and Ohio. *200 N. Gilmor*, 863 F. Supp. 2d at 494; *Bannister v. Agard*, 125 A.D.3d 797, 798 (N.Y. App. Div. 2015); *ATM Exchange, Inc. v. Visa Intern. Service Ass'n*, No. 1:05-cv-732, 2008 WL 3843530, at *11 (S.D. Ohio Aug. 14, 2008).

Plaintiffs allege that GM owed a duty to disclose based on its "superior and exclusive knowledge" of the alleged defect. Compl. ¶ 79. But this is belied by their many allegations of public information about the alleged defect, such as the complaints to NHTSA and on third-party websites. *Id.* ¶¶ 5, 78, 82, 83 (quoting and citing publicly-available materials). Although plaintiffs declare that GM "actively concealed the existence and nature of the defect" (*id.* ¶ 93), they do not

---

production testing are "insufficient to support an inference that a defendant knew about a design defect at the product's time of sale"); *Greene v. BMW of N. Am.*, No. 2:11-04220 (WJM), 2012 WL 5986461, at *7 (D.N.J. Nov. 28, 2012) (rejecting knowledge argument based on product testing as "ungrounded speculation").

identify who specifically at GM was purportedly aware of any concealed facts, the source of that knowledge, or any actions GM took to conceal the facts. This Court "will not consider [p]laintiffs' legal conclusion of duty to be true without any factual allegations to support such a conclusion." *In re Ford*, 2007 WL 2421480 at *8.[11]

The fact that plaintiffs purchased their vehicles from independent dealerships precludes the finding of any such duty to disclose under New York and Ohio law. Courts in New York and Ohio refuse to impose a duty to disclose on remote manufacturers vis-à-vis individual consumers who, like these plaintiffs, purchased their products through independent retailers or dealerships. *See, e.g.*, *Garcia*, 127 F. Supp. 3d at 237 (dismissing claim under New York law because "Chrysler is not alleged to have sold plaintiffs their vehicles, or engaged in any direct transaction with them"); *Bellinger*, 2002 WL 533403, at *5 (no allegation of "any special or fiduciary relationship" between defendant and plaintiff or other consumers "that would give rise to a duty to disclose").

---

[11] *See also Kampuries v. Am. Honda Motor Co.*, No. 15-cv-5061 (JFB) (AKT), 2016 WL 4613361, at *6 (E.D.N.Y. Sept. 6, 2016) (plaintiffs conclusory assertion that defendants knew about alleged defect but "concealed from" or "failed to notify" plaintiff and the public" was "flimsy" and "unfounded" and therefore, insufficient to make out a claim for fraudulent concealment).

Without allegations of any particularized facts meeting Rule 9(b) or reflecting pre-sale knowledge and giving rise to a duty to disclose, plaintiffs' fraudulent concealment claims should be dismissed.

## IV. PLAINTIFFS DO NOT STATE CLAIMS FOR VIOLATION OF STATE CONSUMER PROTECTION STATUTES (Counts 1, 5, 6, and 10).

### A. Plaintiffs Do Not Adequately Plead Consumer Protection Claims.

#### 1. Plaintiffs Anderson And LaTorre Do Not Plead Deceptive Conduct, Reliance, Or Causation.

Plaintiffs' conclusory allegations do not adequately plead the requisite elements of their Maryland or New York consumer protection claims. To sustain a claim under the Maryland Consumer Protection Act ("MCPA"), plaintiffs "must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013). Where, as here, the claim sounds in fraud, plaintiffs must also meet the heightened pleading standard of Rule 9(b). *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013).

To successfully assert a claim under New York's General Business Law ("GBL") §§ 349 and 350, a plaintiff must allege that the defendant engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice. *Yellow Book*

*Sales and Distrib. Co., Inc. v. Hillside Van Lines, Inc.*, 98 A.D.3d 663, 664-5 (N.Y. App. Div. 2012). Although Rule 9(b) does not apply to claims under New York's GBL, to satisfy the ordinary pleading standards of Rule 8 "each plaintiff must also 'individually plead [each of] the disclosures he or she received were inadequate, misleading, or false, and that she was injured as a result of the insufficient or false disclosures.'" *Wright v. Publishers Clearing House, Inc.*, 2019 WL 1177716, at *4 (E.D.N.Y. Mar. 12, 2019) (quoting *Belfiore v. Proctor & Gamble Co.*, 94 F. Supp. 3d 440, 446 (E.D.N.Y. 2015)). Thus courts in New York have found claims under New York's GBL that are "pleaded upon information and belief, lack[] specificity, and allege[] mere conclusions" to be deficient. *Weaver*, 172 F.R.D. at 100.

Here, Maryland plaintiff Anderson does not allege that she personally encountered any specific GM advertisement prior to purchasing her vehicle. Instead, she alleges only that she "relied on GM's representations" in unidentified "commercials and other advertisements" that GM's vehicles "would be free from defects and safe." *Id*. ¶¶ 59-60. Likewise, New York plaintiff LaTorre makes the same conclusory allegations that she was exposed to unidentified "commercials and other advertisements" that GM's vehicles "would be free from defects and safe." Compl. ¶¶ 48-49. Plaintiffs cannot establish that GM engaged in materially misleading conduct without identifying a specific advertisement alleged to be misleading. And although the complaint attaches samples of advertisements, the

27

plaintiffs cannot plead causation without specifically alleging that they saw the specific "misleading statements of which [s]he complains before [s]he came into possession of the products [s]he purchased." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014); *see also Solomon v. Capital One Bank USA*, No. GJH-14-03638, 2014 WL 7336694, at *4 (D. Md. Dec. 19, 2014).

Having failed to identify the time or content of any GM statement or advertisement, plaintiffs have not sufficiently pled misrepresentation, reliance or causation under either Rule 9(b) or Rule 8.

### 2. Plaintiffs Do Not Allege GM Had Knowledge Of A Defect At The Time Of Sale.

Plaintiffs' allegations do not establish that GM knew of a defect in each plaintiff's vehicle at the time of sale, a core element of their claims. *See, e.g.*, *Evans v. Gen. Motors Corp.*, 459 F. Supp. 2d 407, 414 (D. Md. 2006); *Catalano v.*, 167 F. Supp. 3d at 559. For the reasons identified above with regard to plaintiffs' fraudulent concealment claims, plaintiffs do not adequately allege GM's knowledge of a defect at the time of sale.

**B.      Certain Consumer Protection Act Claims Fail On State-Specific Grounds.**

**1.      The Ohio Deceptive Trade Practices Act Does Not Provide A Cause Of Action For Plaintiff Williams.**

Plaintiff Williams' claim under the Ohio Deceptive Trade Practices Act ("ODTPA") should be dismissed because this statute does not provide a cause of action for consumer injuries. *Dawson v. Blockbuster, Inc.* No. 86451, 2006-Ohio-1240, 2006 WL 1061769, ¶ 24 (Ohio Ct. App. Mar. 26, 2006). The ODTPA is modeled after the federal Lanham Act, the purpose of which is to "exclusively protect the interests of a purely commercial class against unscrupulous commercial conduct." *Id.* at ¶¶ 23-24.  Accordingly, as with the Lanham Act, individual consumers are barred from bringing actions under the ODTPA. *Dawson* at ¶ 24; *see also Michelson v. Volkswagen Aktiengesellschaft*, 108 N.E.3d 84, ¶ 16 (Ohio 2018); *Robins v. Global Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 650 (N.D. Ohio 2012) (quoting *Blankenship v. CFMOTO Powersports, Inc.*, 2011–Ohio–948, at ¶ 27, 161 Ohio Misc. 2d 5, 944 N.E.2d 769)).  Thus, plaintiff Williams' cause of action under the ODTPA fails.[12]

---

[12] Plaintiffs may have intended to bring claim under the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01 *et seq.* ("OCSPA").  But to bring a class action under the OCSPA, the conduct in question must have been previously deemed a violation.  Ohio Rev. Code § 1345.09. "[P]laintiff[s] must allege either that 'a specific rule or regulation has been promulgated [by the Ohio Attorney General] under R.C. 1345.05 that specifically characterizes the challenged practice (Continued...)

### 2.   Plaintiff Anderson Cannot Demonstrate The Injury Required Under the Maryland Consumer Protection Act.

Plaintiff Anderson's claim under the MCPA should be dismissed because she cannot show the requisite injury.  To bring suit under the MCPA, a plaintiff must articulate a "cognizable injury" that is "objectively identifiable." *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 621 (D. Md. 2014).  Allegations that a plaintiff would not have purchased the product in question or would not have paid as much are not enough.  *Id.* at 622 (dismissing MCPA claim where plaintiff "merely stated that she would not have purchased the car or 'would have demanded significant price concessions'" and did not allege that she incurred additional repair costs because of the allegedly withheld information); *see also Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 684 (D. Md. 2010) ("[a] hypothetical price concession is simply not the type of tangible injury appropriately recognized in a private MCPA action, as virtually any misrepresentation would support such a claim of injury").

Here, plaintiff Anderson alleges that if she had been aware of the "Headlight Defect" she would not have purchased her vehicle or would have paid less for it.

---

as unfair or deceptive,' or that 'an Ohio state court has found the specific practice either unconscionable or deceptive in a decision open to the public inspection.'" *Pattie v. Coach, Inc.*, 29 F. Supp. 3d 1051, 1055 (N.D. Ohio 2014) (alteration in original).  The plaintiffs cannot identify the requisite prior judicial decision or administrative rule to support any such claim.

Compl. ¶ 66.  Plaintiff Anderson does not plead cognizable or objectively

identifiable injury as required by the MCPA.  *See Chambers*, 43 F. Supp. 3d at

621; *Jones*, 752 F. Supp. 2d at 684.  Indeed, she cannot.  According to the

Complaint, plaintiff Anderson has not incurred any out-of-pocket costs.  Compl.

¶ 62.  Although she alleges that $1,500 is the amount it would have cost for the

replacement parts, plaintiff Anderson also alleges that she did not pay for the repair

because she believed it would not have ultimately fixed the problem.  *Id*.

Without "cognizable" and "objectively identifiable" injury, plaintiff Anderson's

Maryland Consumer Protection Act claim fails.  *Chambers*, 43 F. Supp. 3d at 621.

### 3. Plaintiff LaTorre And The Putative New York Subclass Are Not Entitled To Equitable Relief Under New York General Business Law.[13]

Plaintiff LaTorre lacks standing to obtain injunctive relief.  When seeking

such relief, "a plaintiff must show the three familiar elements of standing: injury in

fact, causation, and redressability."  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404

---

[13] The New York consumer protection statute requires that "the transaction in which the consumer is deceived must occur in New York."  *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324-25 (2002).  Plaintiff LaTorre seeks to represent a "New York Subclass" defined as "[a]ll New York residents who purchased or leased any 2010-2015 Cadillac SRX vehicles."  Compl. ¶ 107.  Because the proposed New York Subclass is not limited to transactions in New York, not all putative class members can bring a claim under New York GBL §§ 349-350.  As mentioned, the availability of a remedy for only some putative class members undermines plaintiffs' assertion that this case may be certified as a class action.  *Diagle*, 2012 WL 3113854, at *5; *Martin*, 292 F.R.D. at 282-85.

(2d Cir. 2011). The plaintiff has the burden of establishing the likelihood of future or continuing harm. *Pungitore v. Barbera*, 506 Fed. Appx. 40, 41 (2d Cir. 2012). A plaintiff cannot rely on past injury to satisfy this requirement; he or she must show a likelihood that he or she will be injured in the future. *Chang v. Fage USA Dairy Industry, Inc.*, No. 14-cv-3826 (MKB), 2016 WL 5415678, at *4 (E.D.N.Y. Sept. 28, 2016). This alleged injury "must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015) (*quoting Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2341 (2014)). Where plaintiffs allege that they would not have purchased the product if they had known about the alleged defect or do not allege that they intend to purchase the allegedly defective product in the future, plaintiffs fail to allege a risk of future harm. *Chang*, 2016 WL 5415678, at *4-5.

Here, plaintiff LaTorre alleges that, had she known about the "Headlight Defect," she would not have purchased her Cadillac SRX or she would have paid less for it. *See* Compl. ¶ 56. She does not allege that she intends to purchase another Cadillac SRX in the future. Indeed, GM is no longer even manufacturing the Cadillac SRX; the last model year was 2016. Additionally, because plaintiff LaTorre is aware of the allegedly deceptive advertising, she is therefore unlikely to be deceived in the future. *Chang*, 2016 WL 5415678, at *4. Plaintiffs' allegations are therefore insufficient to establish a likelihood of future injury, and plaintiff

LaTorre lacks standing to seek injunctive relief individually and on behalf of a class. *Id.* at *5.

## V. PLAINTIFFS DO NOT PLEAD VIABLE UNJUST ENRICHMENT CLAIMS (Counts 3, 8, and 13).

Plaintiffs allege the existence of a written warranty covering their vehicles (Compl. ¶ 12) and therefore cannot recover under an unjust enrichment theory. Under the applicable laws, plaintiffs' unjust enrichment claims (Counts 3, 8, and 13) must be dismissed where there is an express contract. *See, e.g.*, *FLF, Inc. v. World Publ'ns, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998); *Scott v. Fields*, 92 A.D.3d 666, 669 (N.Y. App. Div. 2012); *Carbone v. Nueva Constr. Grp., L.L.C.*, 83 N.E.3d 375, 381 (Ohio Ct. App. 2017).

Although a party may plead a claim for unjust enrichment "in the alternative" where there is a dispute between the parties as to whether a valid or relevant contract exists, it may not do so where both parties acknowledge the existence of an express contract. *Chevron U.S.A. Inc. v. Apex Oil Co.*, 113 F. Supp. 3d 807, 822 (D. Md. 2015); *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471-72 (S.D.N.Y. 2014); *ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., LP.*, 750 F. Supp. 2d 839, 849 (N.D. Ohio 2010).

Plaintiffs also cannot pursue the equitable remedy of unjust enrichment because adequate legal remedies are available. *State v. Philip Morris Inc.*, 1997 WL 540913, No. 96122017, at *15 (Md. Cir. Ct. May 21, 1997); *J & K Parris*

*Constr., Inc. v. Roe Ave., Assoc.*, 2015 WL 3551627, No. 22658 at *8 (N.Y. Sup.

Ct. May 19, 2015); *RFC Capital Corp. v. EarthLink, Inc.*, No. 03AP-735, 2004

WL 2980402, at *19 (Ohio Ct. App. Dec. 23, 2004).  That a legal claim fails on

substantive grounds is of no consequence.  It is the *availability*—not the

viability—of a remedy at law that precludes a claim for unjust enrichment.  *Duffie*

*v. Mich. Grp., Inc. – Livingston*, No. 14-cv-14148, 2016 WL 8259511, at *1 (E.D.

Mich. Jan. 15, 2016).

The unjust enrichment claims of plaintiffs LaTorre and Williams must also

be dismissed because they did not engage in a transaction with GM.  Under the

applicable states' laws, a plaintiff claiming unjust enrichment must allege that he

or she conferred a benefit directly on the defendant or that there was a sufficient

connection between the defendant and the plaintiff. *See Johnson v. Microsoft*

*Corp.*, 106 Ohio St. 3d 278, 286 (2005); *see also Kings Auto. Holdings, LLC v.*

*Westbury Jeep Chrysler Dodge, Inc.*, 48 Misc. 3d 1207(A), at *10 (N.Y. Sup. Ct.

June 29, 2015).  Such a showing is not possible where the case involves consumer

plaintiffs and a remote manufacturer. *Id.* at *10; *Johnson*, 106 Ohio St. 3d at 286.[14]

_____

[14] In *Paikai v. General Motors Corp.*, the court held that Ohio plaintiffs who
purchased vehicles from independent GM dealers had stated claims for unjust
enrichment against GM.  No. CIV S-07-892 FCD GGH, 2009 WL 275761, at *6
(E.D. Cal. Feb. 5, 2009).  Because plaintiff Williams alleges that she purchased her
used vehicle from a *Toyota* dealership, Compl. ¶ 67, *Paikai* does not save her
unjust enrichment claim.

Plaintiffs LaTorre and Williams allege they purchased *used* vehicles, and plaintiff Williams alleges that she purchased her vehicles from another dealer (not even a GM-authorized dealer).  Compl. ¶¶ 47, 67.  Such a relationship is too attenuated to form the basis of an unjust enrichment claim.  *Kings*, 48 Misc. 3d 1207(A), at *10.

## **CONCLUSION**

GM respectfully requests that the Court dismiss with prejudice all of plaintiffs' claims for the reasons stated here.

October 10, 2019                              Respectfully submitted,

                                             /s/*Stephanie A. Douglas*
                                             Stephanie A. Douglas
                                             Susan M. McKeever
                                             BUSH SEYFERTH PLLC
                                             100 West Big Beaver Road, Suite 400
                                             Troy, MI 48084
                                             Telephone: (248) 822-7800
                                             Facsimile: (248) 822-7000
                                             douglas@bsplaw.com
                                             mckeever@bsplaw.com

                                             Kathleen Taylor Sooy
                                             Jerome A. Murphy
                                             Rachel P. Raphael
                                             CROWELL & MORING LLP
                                             1001 Pennsylvania Avenue, N.W.
                                             Washington, D.C. 20004
                                             Telephone: (202) 624-2500
                                             Facsimile: (202) 628-5116
                                             ksooy@crowell.com
                                             jmurphy@crowell.com
                                             rraphael@crowell.com